The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit Court of Appeals. This is the time set for hearing the case of Seaview Trading, LLC, AGC Investments, LLC Tax Managed Partner v. Commissioner of Internal Revenue. We are hearing this case en bloc. We may proceed. Thank you and may it please the Court, my name is Lisa Blatt and I represent the taxpayers. Ms. Blatt, can I just interrupt you for just a second? Yes. Judge Gould, can you hear us? Yes, I can hear you perfectly. Okay. Also, Judge Mendoza, can you hear us? I can, thank you. Apologize, Ms. Blatt, I should have done that before. Please proceed. And if I could reserve seven minutes for rebuttal, please. For three reasons, taxpayers file delinquent returns when they deliver them upon request to IRS officials authorized to receive them. First, the ordinary definition of the word file governs. Second, the IRS for over 20 years has read its regulations to permit taxpayers to file delinquent returns directly with IRS officials. And third, it would be unconscionable to allow the IRS to have an unlimited amount of time to assess liability on every single taxpayer who has ever given a delinquent return to IRS auditors instead of the service center. Propose has long kicked in, and it is unthinkable that an untold number of taxpayers, even to this day, have never filed their tax return. First, the ordinary definition of file governs. The IRS has noted since 1999 that, quote, neither the code, the regulations, nor tax forms make any reference to the filing of delinquent returns. The regulation that the IRS points to, 6031, is at most silent on where to file delinquent returns. Indeed, were this regulation, 6031, the exclusive method to file delinquent returns, taxpayers could not file late returns because, by definition, the deadline in E-2 has already passed. Moreover, Sections E-1 and E-2 are written in parallel language suggesting a close relationship, such that if there is a default on the timing requirement in E-2, the place designation in E-1 becomes obsolete. At a minimum, Section 6031 does not say it is the exclusive place to file delinquent returns, a point that the IRS agrees with on page 32 of its merits brief before the panel in footnote 9. And it would be particularly bizarre to read this regulation as controlling here, where the taxpayer thinks it actually complied with the regulation and filed with the service center, but can't prove it and the IRS can't find it either. It would be completely counterproductive and nonsensical for a taxpayer to send his tax return to the very place that he thinks lost it, and the very IRS officials who are looking for it are standing there and saying, please deliver it to me immediately, directly. Second, for over 20 years, the IRS has read these regulations, as I said, to permit taxpayers to file directly. This is a point that the IRS has not disputed in the two years that this case has been pending. It should not defer today to a convenient litigating position over the IRS's long-considered, long-standing views under which the IRS has operated the tax code for two decades for hundreds upon hundreds of millions of taxpayers. Now, it's true that taxpayers can't rely on informal guidance, and we're not arguing it for reliance, but it's been settled since the 1962 case of Hanover Bank v. Commissioner that these informal guidelines at least reveal the interpretation of the agency charged with interpreting the code and administering the revenue laws on behalf of the country. The IRS has pervasively, pervasively embraced the majority's reading of the regulations in its manual, its policy statements, and its chief counsel memorandum. And it's exhausting to read it, but it has an entire apparatus in its manual that instructs examiners to do exactly what happened here. Go request, go obtain, and go process the legal returns when you can't find them. Counsel, so a question that I have is why should we simply say that if you're a minute late on E2, then E1 is out the door? That why shouldn't we read this as, okay, if you're late, that carries with it, whatever being late has. But E1 is still there, still defines the place for filing, and it still has to be the appropriate service center. And if you face a penalty for being late, you face a penalty for being late, but it doesn't mean you can never file under E1. Right, so we don't, I mean, we think that E1 is best read as applying to only timely returns for the reasons I just gave and the panel majority. But even if you disagree with that, it doesn't say it's exclusive. But more importantly, the IRS has never, until this courtroom, has never read its regulation that way. And so you're imposing on the IRS a view that it has rejected for over 20 years by reading none of its regulations to apply. And if you remember in the brief that I mentioned, they agree that this isn't the exclusive method. So there are other ways to file even timely returns. And I, you know, there's an example in the panel majority in the dissent about whether this, you know, the traffic stop example. And I think if you see requirements like that, like there's a lot of requirements that apply to us as drivers. And if you violate the one that your brake light is broken, you still have to file, you know, stop at the stop sign. The independent commands, just because you default on one, doesn't mean you can just blow through the others. But remember, we think that there is a place designation and you have to file. But we think a more apt hypothetical where you can see two related commands is imagine this example. The rule says all homework must be turned into the homework basket and by 3 p.m. Student thinks he turned in the homework, you know, no problem. And the teacher says after class, hey, Johnny, I never got your homework. Johnny says, oh, my God, I thought I turned it in. I could have sworn. And the teacher says, well, you know, I'm grading the exams. Give it to me. And Johnny gives the exam. Teacher grades it and says, you know, that's a good job, A minus. And then the IRS's view is, oh, no, Johnny gets an F because he never filed in his homework example. And it's worse than that because the teacher has a manual saying, oh, if you can't find the homework, make sure you ask the students for it. Make sure you discourage them from putting it in the homework basket. Make sure you get it directly. And so I get that you could look at your rule and say, well, in isolation, don't put it in the homework basket. Come on. And then I tell you that, well, the school lawyer has been reading it my way. The teacher's manual has been reading it my way. There's a policy statement that acknowledges the whole world for purposes of filing requirements. We will accept for filing delinquent returns upon request. And so another thing I just want to talk about for a minute is we're a sophisticated taxpayer and we're represented. But the Harvard Clinic for Low-Income Taxpayers filed a brief in this case saying that this rule that the IRS adopts would fall directly and most harshly on unsophisticated and unrepresented taxpayers who, shockingly, are five times more likely to be audited because they are poor. And it's cheaper and easier, and you don't have to be skilled to be an IRS agent to go after these taxpayers. The problem I have with your hypothetical is that I'm not sure it matches the facts of this case. My understanding of the facts of this case is that the IRS said, we can't find your return. If you filed it, please provide a copy, proof that you filed it, and your client has represented that it filed the return and it was just providing a copy. And so at the two times I had sent a return to the investigating agent, there was no representation that we didn't file, please accept this as our filing. Right, and I think you've just proven how devastating this would be for somebody who's uneducated that they had to say and make sure you use this four-letter word file. This taxpayer, if I could just finish this one point, it would be outrageous for you to issue a decision that says it only counts if you use the magic words when if we win the point that the regulation doesn't govern and if the IRS has been interpreting the code lawfully for 20 years, none of the manual, none of the policy guidance, and none of the chief counsel memo talks about you have to use the magic word. It's request the return, process it for filing. No one says taxpayer needs to say the word file. So if you hold, okay, the facts don't match this case, rich taxpayers will be able to comply, presumably because the ABA will change its guidance, which is said forever, that by all means it's in your interest, it is counterproductive to send it to the service center. Give it to the IRS officials directly. So I guess the ABA will say and say the word file, but any taxpayer who has ever thought they filed and didn't, the IRS's view is that person could be 90 years old, the taxpayer thought they filed it 80 years ago or maybe, you know, 60 years ago, and they can go after the taxpayer because it was never filed, and the taxpayer can sit there and think, I can't remember if I used the magic word of file or not. Having some understanding of how large government organizations work, it seems to me that we're going to be best served by having the cleanest, most straightforward rule possible. Not a rule that, you know, a different rule for every different situation, but just one straightforward rule, this is filing. So why isn't the cleanest rule, the regs say file it in this particular place, file it in that particular place, and then you're good? You are good, except, again, you're just discarding the IRS's considered view over 20 years. You're saying, well, I'm going to buy their view in the brief because I think, Judge, that that's the best way to run the tax system. When the IRS has said it is very difficult if we have late taxpayers sending to the service center where, you know, they throw away tax forms, they just threw away 30 million of them at a service center in Ogden. They say the tax code, excuse me, the IRS has said the way we administer our tax code and has done so since at least 1999, and even in that memo, it said we always demand that taxpayers do not send it to the service center because it's inefficient, more late penalties will accrue. So I get in your world that that makes sense, but that's not the IRS, the way it's been administering the code, and if you change it, the IRS can retroactively go after any taxpayer on your theory that they never filed. They just can't prove that they sent it to the service center. And their view is, well, their whole apparatus is, I mean, it's just pretending they don't have a manual that has completely rejected your envision of the simple rule. And, again, the brief, the IRS admits that that regulation is not, excuse me, the service center is not the exclusive place. But, of course, the, I mean, one flaw in this argument is the things that you're focusing on don't have the force of law. The statute says you file based on how the regs say to file. The regs say here's the time frame and here's the place. And I can't believe that there's not a lot of detail and specificity with regard to untimely, we don't have a separate rule for that in the regs. So you're relying on all of this stuff that doesn't have the force of law, and why should we go there when Congress has specifically said we focus on the regs? Because Congress has said, look, everyone agrees that the word file is not defined. Everyone agrees that the IRS can set forth the place designations and the time designations. So we're just arguing about whether is there a place designation for delinquent return. And the IRS for 22 years has said, no, there is not a regulation on point. The forms are not on point. The code is not on point. And so, yes, I'm going to scream to the mountaintops that you should consider what the IRS has been doing for 20 years or you will set up a very tragic situation for not only rich taxpayers, who didn't use the magic words, but for an untold ‑‑ I mean, I would ask the IRS, how many other times have they misled taxpayers and told them, please don't send it to the service center because that will mess up my audit. It's very complicated if you send it one place here and I'm doing it here. And this taxpayer is not hiding anything. They were auditing the individual, had the partnership return in 2004, were making notes saying, oh, my God, we better hurry because the statute of limitations is about to expire. Then in 2005 said, you know, we never found your return. So we said, here it is again. And then they waited for I don't know how many years, thinking repose has long kicked in. In their view, they could have come back to us in 2060. And you can do that, but the IRS will continue, and they have not disavowed, they will continue to mislead taxpayers and tell them, do not file your late return to the service center because it's inefficient and it's against your interest. But when I get to court, oh, my God, I'm going to have some fun because I have an unlimited amount of time. The night circuit just said you never filed it. They said, they read the code this way. We'll still tell our agents that we're reading it this way. Ask them whether they'll follow your decision. They've had two years to clarify their regulation. They've had two years to say, you know what, that's not really fair. We're going to adopt this nice neat interpretation, but from now on, please stop misleading taxpayers. Let's get rid of our guidance. Let's get rid of our manual. Let's change our policy statement. And, I mean, I just don't think that's a productive way to run the taxes because it depends on trust. So in your view, Ms. Blatt, taxpayers have two ways to file. They can file in Ogden, Utah or somewhere, or they can just send it to any IRS agent. No. So the way, again, there's all agreement on here, there's three ways. So there is, that's specified in the regulations, the service center, magnetic filing, which I'm not even sure what that means, and the IRS in footnote 9 of its brief says, regulation 6091, hand carry. So hand carried anywhere? No. The chief counsel memo says it has to be an authorized official with responsibility to request, accept, and process late returns. And so it is very specific, saying you have to look at functional job duties. And so the IRS for 20 years has been saying, and I can't tell the difference between, they say service representative, IRS revenue officers, and examiners. But they, possibly any one of those three, that they designate. Now, remember, the IRS has 100% authority to say whatever it wants and can clarify, you know what, we will not accept late for filing except for Joe Schmo. I'm just curious in your view if that's. And so the IRS makes clear, yes, they're stuck with their view that no regulation's on point, no tax form's on point, and we will go after you and look for late returns and we will process them. Now, the reason why they're probably not thinking that poor people are in deep trouble is because they automatically have a process where they count it as filed and they'll enter it into the service center, and here they just didn't do that. But, again, if the government wants to do this meticulous compliance, I mean, that's great, but they should tell taxpayers what the rules are. And they could have done that when this panel issued its first decision. They could have done that when we filed our opening brief. They've had two years to decide, do they want to talk out of two sides of their mouth? And now their answer is they'd like to have their cake and eat it too. I did see you rely on the IRS internal advice from 1999 when it mailed its retained copies in 2005. There's absolutely no proof whatsoever. The only inference is that you can rely on is that they relied on the accepted practice and the ABA guidance, but they did rely on the IRS officials who said, please, you know, provide a tax return. Again, if you ask for reliance, that would be terrible for unsophisticated and unrepresented people who don't know how to use Westlaw. But, I mean, the ABA guidance I also think is devastating. It literally says, by the way, if you send it to the service center, actually, maybe you want to send it to the service center so it will get lost and you might not escape an audit. So here the taxpayer is doing the right thing by sending it directly to the IRS for the purposes of an audit. Instead of sending it to a place that gets 150 million tax returns every year timely, and the IRS doesn't like that because it messes up the audit. You would have, you know, a tax return going to the auditors, tax return going to the service center. I don't know what that does to their computer system. But, I mean, our basic point is I hear you on could there have been another way to run the system, but my question to the IRS is why don't they just tell taxpayers what they want? I mean, there's 300 million of us that have to pay our taxes and would like clear rules. And, again, our system depends on, the system depends on trust. And if their own chief counsel, and they've never revoked it, has said we do not read the code, the regulations, or the tax forms to address delinquent returns, they're going to tell you, no, I read it. I can pick up here and read it. I know how to read English. But I don't know what their chief counsel was thinking, and I think it is fair to assume that the IRS has been implementing the code lawfully for 20 years. They cannot possibly have been going rogue in their manual and their policy statement. But they're doing this because it's in the best interest of both taxpayers and officials. Would you like to reserve the microphone? Yes. Thank you.  I'm Francesca Ugolini, Counsel for the Commissioner of the Internal Revenue Service. The Supreme Court has held that Congress has placed a non-delegable duty of filing on the taxpayer, and meticulous compliance with filing requirements is required to start the limitations period. Courts have enforced these sometimes harsh rules against ordinary taxpayers for over 90 years. CVU, which is a sophisticated partnership claiming a $35 million tax shelter deduction, wants an exception from the rules that apply to everyone else. The code and the regulations have long reflected three ways to file. You can mail it to the service center. You can hand-file with your local IRS office with somebody at that office who is authorized to accept the return. Or you can file electronically. Those were the three options available to CVU. And, in fact, in 2002, CVU was aware of these rules because its return that it claims it mailed in July 2002 was already past due. That return was due in April 2002. CVU had not sought an extension of time to file, but yet it knew that that late return needed to be sent to the Ogden Utah Service Center. Throughout its interactions with the IRS, it maintained that it had filed that return to Ogden, that the limitations period had started in 2002, and it never gave the IRS any reason to consider that any of the documents it provided during the investigation should be treated as a filing. Today, CVU is disavowing the regulation, arguing, actually for the first time in this court, because it's not an argument that was presented to the tax court, that the place for filing regulation does not apply to untimely returns. This is wrong as a matter of text, context, and ordinary grammar. The regulation says the return of a partnership must be filed with the service center prescribed in the relevant IRS instructions. The regulatory... Well, that's just starting off the bat. Isn't that wrong, though? It doesn't have to be filed there. You admitted just a minute ago that it could be filed by hand delivery. Well, this is the... It can, but CVU never attempted to file by hand delivery. But that language, place of filing, is wrong, though, right? No. Because it doesn't have to be there. It could be also done by hand delivery. There are two different regulations that would allow hand delivery... that would apply to a partnership in this case. This one is about if you want to mail your return in, you send it to the service center. Under the regulations under 69B, 6091B allows general hand filing rules for essentially any taxpayer. But CVU never made any attempt to hand file. It's never invoked the other regulations. The point being, though, that this place of filing is not the exclusive place to file it, right? This is the exclusive place to mail a return. So what about delivery to an agent? What's the exclusive way to deliver to an agent? Neither the code nor the regulations has ever acknowledged delivery to an agent unless you are hand delivering to an authorized individual at the IRS office that services your principal place of business or your residence. In this case, CVU was dealing... CVU was located in California. It was dealing with a revenue agent in South Dakota. So its faxing of a retained copy of the return in response to the IRS's request for documents to South Dakota did not meet the filing standards of either the code or the regulations. So if CVU hand delivered it to the agent that asked for it, that would have been filing, but because they faxed it, it's not filing. The revenue agent in South Dakota was not located at CVU's local IRS office. The rules for hand filing have always been limited to hand filing with an authorized person at the taxpayer's local IRS office. It used to be called the district director. That was under the old regulations. And then in 1998, there was a restructuring. Congress ordered a restructuring of the IRS and the names of the various IRS offices changed. If you look at the current regulations that apply today, it says you can hand file with an authorized individual at your local IRS office. Just returning to the text of the regulation, it refers to the return of a partnership. The word return is an unqualified noun. When a noun is unqualified, just under rules of ordinary grammar, it means every sort of that type of noun. So for example, if there's a rule that all cars must be parked in the garage, that would mean those red cars and blue cars. It wouldn't be limited to a particular type of car. This interpretation of the regulatory text is also supported by the regulatory structure. There are separately enumerated subparagraphs that operate independently of one another. One deals with time to file. The other deals with place to file. And both subsections of the regulation can be traced back to independent statutory commands from Congress to both file in the place where the Treasury Department says so and to file at the time that the Treasury Department said so. Council, would the services position be any different if a person with whom the partnership was dealing, in this case one of the individuals, had actually said, hand me this return or mail me this return or fax me this return, any of those three things, and this will be considered filed and the statute will start running? I don't think that any individual person at the IRS had the authority to say, once you give it to me, it will be filed. CVU is relying heavily on a process outlined in the. . . Your answer to my question is, even if hypothetically that had happened, they still, that still would not have started the statute. Correct. And that comes directly from the Lucas versus Piliad Lumber case from the Supreme Court. In that case, there was a company that had sent its tax return to the IRS, but it was unsigned. And eventually, the IRS made an inquiry. The return was under audit. The companies, they said the return is unsigned by statute. It has to be signed to count as an operative tax return filing. And the company responded saying, we've lost the original and we can't reproduce a signed copy. And the revenue agent who was audited in the corporation said, you can go ahead and just send me a statement saying that you swear that that return you sent is true, you know, under penalties of perjury. And so they did that. Was that the person, one of the authorized people to accept a return by hand in that case? In that case, they had mailed their return to the correct place. The problem, the defect in the return is that it was unsigned. I mean, that's the only defect. Right, right. Does the opinion tell us whether that person, I appreciate this is a different defect, but I am asking a different question. Do you have the answer to it? I'm sorry, can you repeat the question? Whether it was an authorized person? Because if not, I'm not sure how Lucas helps us otherwise. Well, the point I was trying to make about Lucas is that the taxpayer in that case, then when it was arguing that the limitations perjury should have run, relied very heavily on the fact that the revenue agent had instructed them to do it in just this way, send us a separate statement swearing that your tax return is true, and the Supreme Court held that no IRS employee had the power to change what the statute requires. So even though the IRS had given that instruction, it still didn't comply with the filing requirement, set forth in the code, and the limitations period was not triggered. And it was that case where the Supreme Court held that in order to trigger the limitations period, taxpayers must meticulously comply with all named requirements. I'm not sure that we're communicating, but I don't mean to waylay you from Judge Bennett's question. No, no. I'm fine. Okay. I am too. Can I ask a question about your argument that in E1, the return of partnership is unqualified, so therefore it refers to all returns, delinquent or timely? How does that work with E2? E2 sets forth the place for filing a return of a partnership. But E2 is the time of filing, I'm sorry. Right. E2 says that a return of a partnership must be filed by April 15th, essentially. But you just said that it refers to all partnerships, I mean all returns, delinquent or timely. So how does that argument work with E2? I think the point that Your Honor is making is that an untimely return, by definition, cannot meet the time for filing requirement in E2. Right. But the fact that in that specific context, it still doesn't turn off E1 as a separate independent command. I'm just saying that your argument about the textual nature of the return being unqualified, meaning it must mean delinquent and timely and delinquent, seems wrong if you read it in respect to E2. Well, if you carry that interpretation over to the full regulation, this regulation has many provisions. It also provides what needs to be in the contents of a return. It talks about penalties with respect to a return of a partnership. So if throughout that regulation return only means a timely return, it means that there's a complete vacuum of rules for the contents of an untimely partnership return. It would mean that penalties for failure to include certain required information don't apply to untimely returns. Taken to its sort of logical end, it would essentially render that regulation a nullity as far as untimely returns go, and it would go even further. Because if you actually go back and look at the Internal Revenue Code, there are over 500 code sections that refer to a return without clarifying whether it's a timely or an untimely return. There are only two code sections that provide a specific rule for a late return. This shows that Congress, unless it is providing a specific rule for a late return, intends the tax code, its references in the tax code to a return to include both timely and untimely returns, because otherwise there would be huge swaths of the Internal Revenue Code that simply don't apply if you happen to file late. And not only would that really amend rules for tax filing, that would amend rules for the basic application and administration of the tax laws. If you happen to file late... Over the last 20 years, how many times IHRS agents have asked taxpayers to file a delinquent return with them? I don't have that information, but I would be happy to clarify the internal guidance from the Internal Revenue Manual, the Chief Counsel advice, and the policy statement, because I disagree. The government disagrees with Steve Hughes' contention that its description of how the IRS is operating is in fact how the IRS operates. So has that ever happened? Has an IRS agent ever asked a taxpayer to file a delinquent return with them? Pursuant to the manual, I am sure revenue agents have offered to help facilitate the filing by accepting the return and forwarding it to the service center. Is the IRS's position now that none of those returns were ever filed? Those returns were filed when they reached the service center. Okay. What is your response to your opponent's argument that the position you're staking out today is inconsistent with this 1999 memo? It is not inconsistent with the 1999 Chief Counsel advice. If you look at the facts section of that advice memo, it is talking about hand-filed returns. And so that memo essentially decides that revenue officers in that local office are authorized individuals to receive hand-carried returns. So that's a decision interpreting the regulation applicable to hand-carried returns. And in this case, we are not dealing with an attempt to ever hand-file a return. The IRS continues to acknowledge that you can still hand-file your return with the proper designated individual at your local IRS office, and that is what that Chief Counsel advice memo is about. It's just it's not talking about the agent who is responsible for an audit and asking for the taxpayer to, let's just say, hand-deliver the return directly to that particular agent? Correct. I mean, and this is getting more technical. That memo actually deals with revenue officers, which I understand sounds a lot like a revenue agent, but that person actually serves a pretty different function within the IRS than someone who does an audit. A revenue officer is someone who works on collecting taxes that are due. So there's been an audit, and now we're in a collection posture. And revenue officers frequently encounter taxpayers who have a sort of long history of delinquencies. And in trying to work out tax collection alternatives with taxpayers, the IRS generally requires taxpayers to be in full compliance with all filing obligations in order to consider installment agreements or offers in compromise. So a revenue officer is somebody who really might be working with a taxpayer who is missing a lot of returns, and I think that Chief Counsel advice memorandum recognizes that it's important for that person to be able to work with the taxpayer to get all of those returns filed. And because that was a hand-filing situation, it fell within the literal terms of the regulation. And the memo explicitly recognizes that, that the decision of the memo is consistent with the regulation. And so the problem here is not simply that the return was faxed or mailed, because even if it had been hand-delivered, it wasn't to the right type of IRS agent. Is that what you're saying? It wouldn't have been to the local IRS office, which is where you can give a hand-carried return. If the IRS agent here had asked Seaview to file the returns directly to him, in what circumstance would it have been deemed filed by the IRS? When the IRS agent who requested it got it? Or once the IRS agent, I say agent, officer, received it, sent it to Ogden, Utah, or facilitated it? Is that what you're saying, that that agent would have then facilitated the actual filing? Correct. The IRS would treat it as filed when it reached the service center. In the Internal Revenue Manual, Seaview is highly oversimplifying what the IRM actually says. If you look at these provisions, the steps that are outlined, the examiner asks the taxpayer to deliver the returns to them. The examiner is required to then forward them on to the service center. And in addition, the examiner is supposed to ask the taxpayer for a written statement signed under penalties of perjury, explaining why the return is late. So that set of circumstances makes clear to both the taxpayer and the IRS agent that we are working together to facilitate the filing of delinquent returns. And that is a far cry from the facts in this case where the IRS opened an audit on Seaview because it had information from a different audit that there was a tax shelter involved. And the first communication was the revenue agent sending what we call an information document request. That's essentially an informal summons. That was the first communication. That's at ER 233. And this was a request to answer 15 different questions and provide seven different types of documents. And with respect to the tax returns, it said provide copies of all retained copies of any return that Seaview may have filed, along with proof of mailing. Seaview responded to the document request. But at no point in this case was there a request from the IRS agent to file the missing return or a request on Seaview's part to, hey, can you help us file the missing return? And, of course, Seaview was well represented. It had a national law firm, which, you know, could have helped it file a missing return if that is what it had hoped to do. I'd just also like – I want to ask a question on the record. Sure. So the communication from the IRS that instigated the first copy being presented to them said you didn't file, we don't have a filing for you. Was there ever in the record, is there any indication that the IRS at any point in time told Seaview that a filing had been made? No. I'm aware that there are cases out there that say that delivery to an agent at request and then the agent submitting the return for filing constitutes a filing. Is there a case out there that says that simply delivery to the agent who's requesting it, without regard to whatever the agent may have done with the return that it received, is a filing? No. Thank you. Well, to follow up on that question, it may not have used those exact words, but, for example, the IRS did write and say, we're required by law to send you this notice. This is your notice that we are starting an administrative proceeding at the partnership level with respect to partnership items related to the partnership return identified above, right? Right. And, I mean, in lay terms, you can't have a partnership return identified above unless there was actually a return, right? I think the IRS had, you know, had obtained information that there was a partnership return out there somewhere claiming a $35 million tax deduction because Robert Kotick, who was the ultimate partner, had claimed that deduction on his tax return. You know, partnership items flow up. So I think, you know, the sort of generic language that we're opening an audit about this partnership return shouldn't be construed as an admission by the IRS that there was one that was actually filed. Although lay people reading partnership return identified above would read that to mean the partnership return that you, the IRS, have and are looking at because you're, in fact, quoting from some stuff that's in that return, right? Right. But it is, you know, numerous courts have held that the fact that the IRS actually has the information does not constitute a filing for limitations period purposes. And I would direct this court to the Coffey case from the 8th Circuit. That was a case just decided last year where the IRS was forwarded a copy of the taxpayer's return from the Virgin Islands Department of Revenue. They were able to use the Form 1040 to do an audit of the taxpayer. But the 8th Circuit held the IRS's actual knowledge, the IRS's actual access to the information, does not trigger a filing for limitations period purposes. I'd like to clarify a couple other points about the Internal Revenue Manual because CBU places such heavy reliance on the manual. One of the chapters they're relying on, 4.12, which is the sort of general sort of procedures about how to handle a situation with non-filed returns, if you go down to 4.1152, it actually says if you're dealing with a delinquent partnership, follow the procedures for delinquent partnership exams. CBU has not cited those procedures at all. Those are in Section 4.31. And in the procedures applicable to delinquent partnership returns, there is no instruction to IRS examiners to solicit or accept delinquent returns.  There's another part of the Internal Revenue Manual, Chapter 25.6, that says unequivocally, a tax return given to a revenue agent is not considered filed. So a taxpayer who is actually reading the manual and relying on it in deciding how to interact with an IRS agent would view all of this and understand that the manual does not displace the ordinary filing rules. In fact, it's consistent with the filing rules that are set forth in the code and the Treasury regulations. I'd just also like to respond to their reliance on this policy statement. I mean, this is a generic policy statement that just says all delinquent returns will be accepted, and that's a good policy. The IRS should accept all delinquent returns. There is nothing in that generic policy statement that purports to displace the specific rules for how you actually file delinquent returns. Well, it does say all delinquent returns submitted by the taxpayer at the request of a service representative will be accepted. Right. So a taxpayer doesn't need to, you know, for example, file a motion for leave to file a delinquent return to make the case for accepting the delinquent return. But that policy statement does not say that it will be filed because the IRS accepted it when you were directed by an IRS employee to file your missing return. I'd like to just make one further point about fairness, because I know CPU has really tried to make this case a question of fairness, and I would urge this court to consider fairness from a somewhat different perspective. Every year there are millions of ordinary, unsophisticated taxpayers who lack access to the accountants and attorneys that CPU had, and they manage to file their tax returns on time and to the right place. It is unfair to those millions of taxpayers who follow the rules to hold a sloppy filer like CPU to a lower standard and thereby let them off the hook for the taxes they actually owe. And in this case, we're talking about a $35 million tax deduction that CPU conceded in the tax court that it is not entitled to. Unless the court has any further questions, I would ask you to affirm the decision of the tax court. Thank you.  I mean, if you affirm the tax court's decision, I hope you have a lengthy addendum of the oral argument transcript so we can see how all the policy guidance has been amended and finally explained. I mean, absurd. I hope that's not too strong of a word. But the policy statement says, any service representative. The manual says, any examiner. And the manual says... That's what this memo says. Exactly. The memo says, any... What's the memo? So the memo just refers to, I don't know what the GS level is, but anyone authorized, as you said, I don't think it mentions audit, authorized to... Hang on, hang on. I think what she's saying is that the regulation does have this alternate provision to hand deliver to a specified class of, I don't know what, I'm using the right term, but IRS agents, right? So, yeah, she's conceding, as you said, and pointing a foot out behind that there's a different way other than just going to the service center. But what she then says is that this memo is talking about that alternate method. Which is correct. Which relates just to a specific class of IRS agents, and it's talking about hand delivery. And then she says, well, in this case, you couldn't possibly have relied on the supposedly misleading guidance here, because not only did you not hand deliver the return, but you didn't deliver it to the right type of agent. So respond to that. Yeah, so on the response to the right agent, the way I read it, and we can all read it together, is that it's saying any agent that has the functional job duty to accept delinquent returns and process them. And here, before the audit even started, an agent called up and said, I need your return. I don't have it. And so they've never said why that officer didn't have it. Moreover, the... Didn't have the return or didn't have the authority. Didn't have the authority or the return. Their view, I mean, just remember, everything she said allows the IRS, solely at its discretion, to manipulate the tax system, because apparently it has to go to the right officer. We're not sure who those people are. The right office, the right type. I can't tell with facts, and they have to use the right word. And if they don't, it'll say, I can help you file, and I'll help you file your tax return, and if they don't, you're disposed. Because they can just not... You can say, please file it. Are you the correct... You're more familiar with the different classes of IRS agents than I am, but I thought what I heard her say is that this is talking about revenue officers. Those are the people who, I guess, are responsible for actually collecting the money. They're not the people who are engaged in, I gather, the audits. Is that incorrect? I think that is correct. And the audit hadn't started when a revenue, whoever, I don't know what he is, a tax official said to CVU, I don't have your return. Can you send it? And then that was in July, and then October, I think it was sent in September, then October they said, we're going to do an audit. But if this case comes down to right officer or magic words, I just don't even know what would happen to all the taxpayers who they say, we can go after you any time of an audit, and I don't know who told you to get that return. And the IRS, I'm sorry, the official, excuse me, the taxpayer is going to go, I don't know who I talked to. His name was Joe Schmoe, who called me up and said and had an audit. And so you are basically saying the one person who has complete control can run a system where none of us can tell exactly what it means. The policy statement is sweeping. It says twice, delinquent returns, enforcement of filing requirements, delinquent returns, enforcement of filing requirements. All delinquent returns will be accepted. Is that what you're saying happened to your CVU's representative? I don't know if it was a lawyer or accountant. Accountant, I think. Was confused or didn't know. No, I think what happened was the taxpayer thought that they had sent it to the service center, and it would have been untimely, and one position is if there's a delinquent return, you can send it to any authorized place. It would be the service center or the IRS official requesting it. And so the IRS said give it to me, and they gave it to them. The last thing a person would think is I'm going to send it, resend it to the service center where the IRS is asking me. It's, again, the homework example. Had there not been, I thought I heard that there was like a seven-question inquiry or before all of that, I mean, there was some interaction between. Yes, it said we can't file your return. Did you file it? When did you file it? And give me a copy. So that's accurate about the facts. They said we don't think you filed it. Give us a copy. They didn't say refile it with me. I mean, I think that's a fair characterization. So they didn't use magic words. What did they say? You said you filed it, right? We thought we filed it, so we sent them a copy. But apparently we should have said, and please count this as a filing and confirm that you've mailed it to the service center, or otherwise we'll need to mail it to the service center, in which case, who knows what will happen to it. And I'm just saying this is a track for the unwary. The other side of your position, though, is that as a taxpayer, I could just identify any sort of IRS agent no matter where, no matter what their job description is, hand them my return, and then I'm good. No. This is a – they sent them a bill. They actually audited it and said – she just said if a taxpayer found it on the street and gave it to the service center, it would count as filed. But under their view, if they come to you looking for it and say, oh, actually, we'll file it for you, but don't, it's not filed. Counsel, here's my question. All we're saying is that – Counsel. Counsel. Yes, sir. Governor, Judge Mendoza, over here. Here's my question. So when you were told that it was not filed, you were told by the IRS it was not filed, why then did you not file it at that point? That's the question. I think there's two reasons. One is because they thought they had filed it, and second, this idea of this protective filing. Hold on, hold on, hold on a second. They just told you it was not filed. They couldn't find it. That's correct. Why didn't you then just say, okay, I need to file this or just file it? Why didn't you do that? They didn't do it because – and there's no factual discovery on this. But so this is all speculation. The Chief Counsel memo says that it is very inefficient to send it to the service center because it just complicates the audit. And so a sophisticated taxpayer represented by counsel, I think, followed the ABA guidance that says, in which their internal guidance says, they routinely demand taxpayers file directly with the IRS officials looking for them. And so they could have done that. They could have filed it twice. They could have sent it to the service center. And it could have then messed up the audit because the audit now has to match up the file document with the service center and the disputed purported filing with the auditor. And when it's a complicated tax form, it's just it messes up the audit. If the IRS wants taxpayers to send it to places, it can tell them to do that. The notion, just by the way, that this is somehow advantageous to taxpayers, they're not only subject to being charged with a crime, but there are massive penalties. Remember, if you're late, you have to pay penalties on the tax amount due and for a willfully failing to file. They had a certificate of mailing. Oh, yeah. No, I know. I'm just saying there's no incentive to just hope that the IRS audits you and count the filing then because you will be assessed late penalties. So there were massive late penalties assessed here. The only reason they weren't charged is the IRS forgot to get managerial approval, but the taxpayer would have owed massive penalties. The other thing is that the limitations period just doesn't run until the IRS gets the document, and the IRS routinely asks for an extension. And so the IRS hasn't told you why they needed to start an audit on a date certain. And in their view, it's never been filed to this day. The taxpayer has never filed a tax return, even though it was delivered as part of an official auditing process where I guess we're debating over whether this particular officer had this particular delegated authority pursuant to the manual, pursuant to the guidance, even though I do think the policy statement says any service representative. And if I could just make one more point, is that in terms of the cases, I don't think any court has rejected the notion that if the IRS requests it as a part of an official proceeding and you deliver it to the IRS official, that doesn't count as a filing. Those are all cases where it went to either a guy in the hallway or the Virgin Islands. And it cannot be a guy in the hallway because here we have an official officer coming to you looking for a return. And again, I would just think about the average taxpayer getting a phone call from the IRS saying, we can't find your return, give it to me. And the IRS's view is do not listen to the IRS official. I guess you have to listen to the IRS official, but you better know on your own to re-send it to the service center or use magic words. And I think that is it. Unless you have further questions. Judge Kuhl, do you have any questions? No questions here. Thank you. Judge Mendoza, do you have any further questions? No further questions. Thank you. All right. Thank you. Thank you, Ms. Blatt and Ms. Ugolini. I appreciate the oral argument presentations here today. In the case of CBU Trading, a GK Investments versus the Commissioner of Internal Revenue is now submitted. We are adjourned. Thank you. All rise. This court for this session stands adjourned.
judges: MURGUIA, GOULD, CHRISTEN, WATFORD, BENNETT, FORREST, BUMATAY, SUNG, THOMAS, UNKNOWN, UNKNOWN